COMMONWEALTH of Pennsylvania,
Appellee

v.

Archie WASHINGTON, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 28, 2013.

Filed March 12, 2013.

Archie Washington, appellant, pro se.

Risa V. Ferman, District Attorney and Robert M. Falin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, J., and FITZGERALD, J.*

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Montgomery County following Appellant's conviction on the charges of possession with the intent to deliver a controlled substance, possession of a controlled substance, firearms not to be carried without a license, and felon not to possess a firearm.[1] In addition to this appeal, appellate counsel has filed a petition seeking to withdraw his representation and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (Pa. 2009), which govern a withdrawal from representation on direct appeal. After a careful review, we affirm and grant appellate counsel's petition to withdraw.

The trial court has aptly set forth the relevant facts and procedural history, in part, as follows:

On August 6, 2010, at approximately 2:45 p.m., Norristown police officers were dispatched to the area of Oak and Green Streets, Montgomery County, for an armed suspect. According to dispatch, the subject was wearing a blue shirt, tan shorts and had a beard and racked a round into the chamber of a gun before getting into a green Volvo. This information was called into dispatch by Detective Michael Fedak, a Mont-

gomery County detective. Detective Fedak had received the information from a reliable confidential informant. County dispatch also advised that Norristown Police Department vehicle 5233, which was being driving by Officer Kathleen Kelly, was driving behind the green Volvo before the suspect got into the vehicle. Officer Kelly drove away before the call was dispatched.

Officer Kelly advised other Norristown police officers that the windows on the green Volvo had a medium tint and that the driver was a black male with facial hair on his chin. He was also wearing a white tee shirt.

Eleven minutes after the call was dispatched, Officer Gerald DelGrosso observed the green Volvo matching the description provided through dispatch. Officer DelGrosso conducted a vehicle stop.

There were three subjects in the vehicle and all were searched, including Appellant. The search of Appellant's person revealed that he had a Luger P85 firearm in his waistband, which was concealed by his shirt. The gun had one 9 millimeter round in the chamber and 14 in the magazine. A sandwich bag containing five baggies of suspected cocaine was found in his right, front pocket. Subsequently, prior to placing Appellant into a holding cell, Officer Kelly recovered $1,374 from his front, left pocket.

On November 3, 2010, defense counsel filed an Omnibus Pre–Trial Motion, including a Motion to Suppress. On December 14, 2010, counsel also filed a Motion to Compel Disclosure of Confi-

---

* Former Justice specially assigned to the Superior Court.

1. 35 P.S. § 780–113(a)(30), 35 P.S. § 780–113(a)(16), 18 Pa.C.S.A. § 6106(a)(1), and 18 Pa.C.S.A. § 6105(a)(1), respectively.

dential Informant. On February 22, 2011, a Suppression Hearing was held at which time all pretrial motions were heard. After the [lower court] put its findings of fact on the record and announced its conclusions of law, both the Motion to Suppress and the Motion to Compel Disclosure of Confidential Informant were denied.

On March 23, 2011, a Stipulated Bench Trial, [at which the affidavit of probable cause was admitted into evidence,] was conducted, at the conclusion of which Appellant was found guilty of the aforementioned charges and sentenced to an aggregate of 5 to 10 years' imprisonment.

Trial Court Opinion filed 6/15/11 at 1–3 (citations to record omitted) (footnote omitted).

Appellant did not file post-sentence motions; however, on April 21, 2011, he filed a timely, counseled notice of appeal. The trial court directed Appellant to file a Pa. R.A.P. 1925(b) statement, Appellant complied, and the trial court filed an opinion.

On July 13, 2011, Appellant's attorney discontinued Appellant's direct appeal; however, on July 20, 2011, after new counsel, Assistant Public Defender Timothy Peter Wile, was appointed, Appellant filed a counseled motion seeking the reinstatement of his direct appeal, which this Court granted on November 23, 2011. Thereafter, as indicated *supra*, Assistant Public Defender Wile filed a petition to withdraw and submitted an *Anders/Santiago* brief.

 Preliminarily, we must address counsel's petition to withdraw. Court-appointed counsel who seeks to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 602 Pa. at 178–179, 978 A.2d at 361. Our Court must then conduct its own review of the proceedings and make an independent judgment to decide whether the appeal is, in fact, wholly frivolous. *Id.* at 359 (citation omitted).

In the case *sub judice*, counsel has complied with the dictates of *Anders* and *Santiago*, having made a conscientious examination of the record, controlling case law, and applicable statutes. Counsel has also identified for our Court the issues and supporting testimony that may arguably be raised on appeal. Furthermore, counsel has notified Appellant of his request to withdraw, furnished him with a copy of the *Anders/Santiago* brief, and advised him that he may retain new counsel, proceed *pro se*, or raise any additional points that he deems worthy of our consideration.[2] We will now conduct our independent review of the issues raised by counsel and determine, using our own judgment, whether the appeal is wholly frivolous.

 Appellant first claims the trial court abused its discretion in denying his motion to compel disclosure of the confidential informant, who informed Detective

---

2. Appellant has not filed a brief with the assistance of privately-retained counsel or *pro se*.

Fedak that Appellant was armed with a loaded handgun and had entered the green Volvo.

 "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Withrow,* 932 A.2d 138, 140 (Pa.Super.2007).

Indeed, where the informant was an eyewitness to the [crimes] in question, the role of the trial judge's discretion is established by rule of court. *See* Pa. R.Crim.P. 573(B)(2)(a)(i).[3] Where the informant was not an eyewitness, the extent of the court's discretion is specified more broadly by case law. As noted by [this Court]:

> We believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crimes charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

[*Commonwealth v.*] *Belenky,* 777 A.2d [483], 488 [ (Pa.Super.2001) ] [ (citations omitted) ]. Significantly, regardless of whether the informant was an eyewitness to the [crimes] for which the defen-

dant was charged, the Commonwealth retains a qualified privilege not to disclose an informant's identity. To overcome that privilege, the defendant must show that his request for disclosure is reasonable and that the information sought to be obtained through disclosure is material to the defense. Although the defendant need not predict exactly what the informant will say, he must demonstrate at least a reasonable possibility the informant's testimony would exonerate him. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

*Withrow,* 932 A.2d at 140–141 (citations, quotations, and quotation marks omitted) (footnote added).

In this case, in denying Appellant's motion to compel disclosure of the confidential informant, the trial court stated the following in open court:

> Now, the defense seeks to have the identity of the confidential informant revealed. Quite clearly, here the balance does not weigh in favor of revealing the identity of the confidential informant. This confidential informant was not present at the scene of the car stop where the actual crimes charged here were uncovered. The confidential informant was not involved in the underlying criminal activity, as in the more common situation, where the confidential informant is directly participating in a controlled buy.

---

**3.** Pa.R.Crim.P. 573(B)(2)(a)(i) provides, in relevant part, the following:

> In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attor-

ney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

> (i) the names and addresses of eyewitnesses[.]

Pa.R.Crim.P. 573(B)(2)(a)(i).

The identity of this defendant is not at issue. He was caught red-handed, so to speak, by the police with the gun and the drugs. Alibi is not the issue. And the identity of the confidential informant is not crucial to the defense here, as it might be in some cases. Accordingly, the motion to reveal the identity of the confidential informant is denied.

N.T. 2/22/11 at 67–68.

The trial court further explained its ruling in its Pa.R.A.P. 1925(a) Opinion, in relevant part, as follows:

In this case, the balance did not weigh in favor of revealing the identity of the confidential informant[.] Detective Fedak testified at the Suppression Hearing that the disclosure of the [confidential informant's] identity would place the [confidential informant] in danger. The detective explained that the [confidential informant] has family and friends in the community, who could be targeted if his identity was revealed. Additionally, the defense did not present any evidence that the identity of the informant was material to the preparation of its defense. The identity of Appellant was not an issue, and an alibi defense was also not at issue here. Further, the [confidential informant] was not present at the scene of the car stop where the actual crimes charged were uncovered, and the [confidential informant] was not involved in the underlying criminal activity. Appellant was caught in the act by the police with the gun and drugs. Therefore, this Court properly denied Appellant's motion to reveal the identity of the confidential informant.

Trial Court Opinion filed 6/15/11 at 5–6 (citations to record omitted).

We find no abuse of discretion in this regard and conclude the trial court properly denied Appellant's motion to compel disclosure of the confidential informant. *See Withrow, supra.*

Appellant next claims the trial court erred in denying his pre-trial motion seeking to suppress the physical evidence found on Appellant's person following the stop of the green Volvo in which he was a passenger. Specifically, Appellant contends the police did not have reasonable suspicion or probable cause to stop the Volvo.

[I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cauley,* 10 A.3d 321, 325 (Pa.Super.2010) (quotation omitted).

[Initially, we] observe that the forcible stop of a vehicle constitutes an investigative detention such that there must be reasonable suspicion that illegal activity is occurring. Police are justified in stopping a vehicle when relying on information transmitted by a valid police bulletin. Moreover, even where the officer who performs the stop does not have reasonable suspicion, the stop is nonetheless valid if the radio officer requesting the stop has reasonable suspicion.

*Commonwealth v. Cruz,* 21 A.3d 1247, 1250 (Pa.Super.2011) (citations omitted).

Reasonable suspicion is a less stringent standard than probable cause nec-

essary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Holmes,* 609 Pa. 1, 12, 14 A.3d 89, 95 (2011) (citations, quotations, and quotation marks omitted). *See Commonwealth v. Brown,* 606 Pa. 198, 996 A.2d 473 (2010).

To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens. Naturally, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. This Court has examined the requirements surrounding reasonable suspicion for automobile stops emanating from information provided by a tipster and has explained:

Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality— are considered in the 'totality of the circumstances—the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. However, a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so.

Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Commonwealth v. Barber,* 889 A.2d 587, 593–94 (Pa.Super.2005) (quotations, quotation marks, and citations omitted). *See Brown, supra.*

Here, at the suppression hearing, the trial court set forth in detail the reasons it was denying Appellant's motion to suppress. N.T. 2/22/11 at 63–74. The trial court further explained its ruling in its

Pa.R.A.P. 1925(a) opinion, in relevant part, as follows:

In this case, the information provided to Detective Fedak was provided by a reliable [confidential informant]. The Commonwealth presented sufficient evidence that the [confidential informant] was reliable through the credible testimony of Detective Fedak. Detective Fedak, a veteran police officer, had worked with this particular [confidential informant] for four years. The [confidential informant's] information has proven to be reliable in the past. In fact, this [confidential informant] has never proven not to be reliable. This [confidential informant] had provided assistance in drug investigations, robbery investigations, and murder investigations. This [confidential informant] had participated in controlled buys and has helped the detective recover various types of narcotics. Additionally, information from the [confidential informant] has led to arrests. This is not a situation where the detective received an anonymous tip. This was a reliable [confidential informant].

The information that the [confidential informant] provided was specific. The [confidential informant] told Detective Fedak that a black male wearing tan cargo pants and a blue shirt, with a beard, was standing on the street corner and had taken a firearm out and racked a round into the chamber of the firearm. The [confidential informant] also told the detective that the individual had gotten into a green Volvo, which was being driven by another black male in a white tee shirt, and they were traveling up Oak Street towards Green Street.

The information provided to Detective Fedak was called into the radio room by him and was dispatched. The dispatch included the fact that the call was coming from Detective Michael Fedak and that his information was coming from a confidential informant. After Detective Fedak's call was dispatched, Detective Fedak spoke to Officer Kelly. Detective Fedak relayed to the officer that he received his information from a reliable [confidential informant]. Also, at that time, Officer Kelly provided the detective with additional information about the driver of the green Volvo and the fact that the vehicle had a medium tint. This information was also dispatched.

Officer DelGrosso received the radio call and knew the information was coming from Detective Fedak, someone that Officer DelGrosso knew and had worked with in the past. The dispatch also informed Officer DelGrosso that Detective Fedak received the information from a confidential informant. Also through the dispatch, Officer DelGrosso knew that the green Volvo had a medium tint and that the driver was a black male with a white tee shirt and facial hair on his chin.

Eleven minutes after the call was initially dispatched, Officer DelGrosso spotted the vehicle which matched the description, and he was able to see that the driver matched the description of a black male wearing a white tee shirt with facial hair on his chin. Officer DelGrosso made the vehicle stop. The stop was made just three-quarters of a mile from where the initial location of the vehicle was said to have been seen by the [confidential informant]. Officer DelGrosso had sufficient reason to believe that the green Volvo, which he stopped, was the subject of the dispatch. Based on these facts, and the totality of the circumstances, Officer DelGrosso was constitutionally authorized to effectuate the vehicle stop.

Trial Court Opinion filed 6/15/11 at 12–14.

We agree with the trial court that the police had the necessary reasonable suspi-

cion to stop the green Volvo, and therefore, Appellant's argument to the contrary is meritless. *See Commonwealth v. Gutierrez*, 36 A.3d 1104 (Pa.Super.2012) (where information about man carrying heroin was provided to police from a person who identified himself, and the information placed the suspect in a particular place at a particular time in a particular vehicle, the police had reasonable suspicion that criminal activity was afoot); *Cruz, supra* (where officer received radio dispatch to be on lookout for "older model green, small vehicle" since man driving it had a gun, the officer had reasonable suspicion to stop the vehicle, which matched the description, one minute later, particularly where complaining witness was in the company of the police at the time). As such, we find the trial court properly denied Appellant's suppression motion on this basis.

■ Appellant next claims the trial court abused its discretion in precluding Appellant from cross-examining Detective Fedak at the suppression hearing with the use of a handwritten letter, which was allegedly written by the confidential informant and mailed to Appellant while he was in prison. In the letter, the confidential informant allegedly stated, "Yeah, I called the police on you. I know I set you up. I know you didn't have a gun at the time, but you know what? I want money. I want 1500 bucks, and send it to this address." N.T. 2/22/11 at 32. Appellant contends the trial court should have permitted him to utilize the letter to challenge the reliability of the confidential informant's information, which was given to Detective Fedak prior to the stop of the green Volvo. N.T. 2/22/11 at 32–33.

■ Initially, we note that the "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the

trial court clearly abused its discretion." *Commonwealth v. Schoff,* 911 A.2d 147, 154 (Pa.Super.2006) (quotation omitted). Additionally, "[i]t is well settled the trial court has the discretion to determine the scope and limits of cross-examination and that this Court cannot reverse those findings absent a clear abuse of discretion or an error of law." *In re Lokuta,* 608 Pa. 223, 252–253, 11 A.3d 427, 444 (2011) (quotations, quotation marks, and citation omitted).

Here, in ruling the letter was inadmissible in order to cross-examine Detective Fedak, the trial court concluded the letter constituted hearsay, not subject to any exception.

"Hearsay, which is a statement made by someone other than the declarant while testifying at trial and is offered into evidence to prove the truth of the matter asserted, is normally inadmissible at trial." *Commonwealth v. Carson,* 590 Pa. 501, 913 A.2d 220, 254 (2006); *See* Pa.R.E. 801(c) & 802. Of course, out-of-court statements by an unavailable declarant may be admissible if they fit within one of several recognized hearsay exceptions, such as former testimony, a statement under belief of impending death, a statement against interest, or a statement of personal or family history. *See* Pa.R.E. 804. In the alternative, out-of-court statements may be admissible because they are nonhearsay, in which case they are admissible for some relevant purpose other than to prove the truth of the matter asserted. *See Commonwealth v. [Raymond]* Johnson, 576 Pa. 23, 838 A.2d 663, 680 (2003) (defendant's statements threatening witness's family admissible as verbal acts, a form of non-hearsay, because evidence not offered to establish truth of matter asserted, but rather, to demonstrate fact of attempted influ-

encing of witness); *Commonwealth v. Puksar*, 559 Pa. 358, 740 A.2d 219, 225 (1999) (statements by witness who overheard defendant and his brother (the victim) arguing were admissible as nonhearsay because not offered to prove truth of matter asserted, but rather to establish motive for killings).

*Commonwealth v. Ali*, 608 Pa. 71, 126–127, 10 A.3d 282, 315–316 (2010). *See Commonwealth v. Levanduski*, 907 A.2d 3 (Pa.Super.2006) (en banc) (explaining exceptions to hearsay rule include "dying declaration," "excited utterance," "present sense impression," "state of mind," and "complete story" doctrine).

Assuming, *arguendo*, the letter was written by the confidential informant,[4] we agree with the trial court that the letter at issue constitutes hearsay in that it was offered for the truth of the matter asserted, *i.e.*, the letter was offered to prove the declarant called the police, "set up" Appellant, and knew Appellant did not have a gun. That is, by Appellant's own admission during the suppression hearing, Appellant attempted to cross-examine Detective Fedak with the letter in order to demonstrate the confidential informant was not reliable, *i.e.*, he falsely told Detective Fedak that he observed Appellant with the gun in order to extort money from him. N.T. 2/22/11 at 32–33. Simply put, the evidentiary value of the letter depended on the truth of its content, and the suppression court had to believe the actual text of the letter, that is, the matters asserted therein, to grasp what the letter was offered at trial to prove. *See Levanduski, supra.* Thus, and inasmuch as we conclude there is no applicable hearsay exception,[5] we agree with the trial court that the letter was inadmissible for the cross-examination of Detective Fedak on this basis. *See Ali, supra.*

We have conducted our own independent review and conclude the appeal is wholly frivolous. *See Anders, supra.* Thus, we affirm the judgment of sentence and grant appellate counsel's petition to withdraw.

Affirmed; Petition to Withdraw Granted.

FITZGERALD, J., CONCURS IN THE RESULT.

---

4. It is noteworthy that, when Appellant's counsel showed the letter to Detective Fedak, the detective denied the letter was written by the confidential informant. N.T. 2/22/11 at 31. Additionally, we note the trial court concluded Appellant sought to question Detective Fedak about the letter, in part, in an attempt to improperly learn the identity of the confidential informant. Trial Court Opinion filed 6/15/11 at 16.

5. For instance, (1) there is no evidence the declarant believed he was dying when he wrote the letter, thus the "dying declaration" exception is inapplicable; (2) the letter is in a narrative form and refers to past events, thus the "excited utterance" exception is inapplicable; (3) the letter does not reveal the declarant was seeing an event and making observations about it to another person present at the scene, thus the "present sense impression" exception is inapplicable; (4) the letter, which was apparently written well after the criminal events and delivered to Appellant while he was in prison, is too remote in time to represent the declarant's "state of mind," which was not an issue at the suppression hearing until the letter is considered for the truth of the matter asserted, thus the "state of mind" exception is inapplicable; and (5) the letter is not admissible under the "complete story" doctrine. *See Levanduski, supra.*