J. A03031/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
              Appellee :
:
          v. :
:
DAVID CARL KESLER, :
:
              Appellant : No. 1027 MDA 2014

Appeal from the Judgment of Sentence June 5, 2014
In the Court of Common Pleas of Perry County
Criminal Division No(s).: CP-50-CR-0000148-2013

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MARCH 09, 2015**

Appellant, David Carl Kesler, appeals from the judgment of sentence entered in the Perry County Court of Common Pleas following his conviction for driving under the influence of alcohol (DUI)—high rate of alcohol.[1] Appellant claims the trial court erred in concluding the initial traffic stop was justified by reasonable suspicion. We affirm.

The trial court set forth the background to this appeal.

> [Pennsylvania State Trooper Scott A. Roussell] testified that he was called to the scene of a bar fight at White Oaks Bar. Upon arrival, the Trooper was informed that there was a fight involving a group of people on motorcycles. Some had fled prior to the Trooper's arrival

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(b).

however, eyewitnesses described the motorcycles and the individuals driving them. The Trooper met with the victim in this incident and he stepped outside to show the Trooper damage to his motorcycle seat from a cigarette burn. At that point, the Trooper stated that people [o]n motorcycles began leaving the area.

Trial Court Op., 8/28/14, at 2.

Our review of the suppression record reveals the following details relevant to this appeal. While Trooper Roussell was outside the bar with the victim, he observed three motorcycles leaving the area. N.T., 10/23/13, at 8, 17. According to the Trooper, the victim "pointed out that looks like some of the guys that were involved in the fight." *Id.* at 18. The Trooper yelled and attempted to stop the drivers by waving his flashlight. *Id.* at 8, 17-18. One of the three motorcyclists stopped. *Id.* at 17. The other two motorcyclists made a left turn, went across the grass of a yard of a nearby trailer to the roadway, and "didn't stop to yield to any possible traffic on the road." *Id.* at 11, 17.

The Trooper pursued the two motorcycles in a marked vehicle and activated the emergency lights and sirens. *Id.* at 8, 18. One of the motorcyclists, later identified as Appellant, pulled over to the side of the road. The Trooper drove by him to pursue the other motorcycle, which fit the description of an individual or vehicle he obtained during his investigation of the bar fight. *Id.* at 8. The Trooper stopped the other motorcyclist at the intersection of Routes 34 and 274, approximately one-half mile from where Appellant initially stopped. *Id.* The Trooper testified

he did not observe Appellant commit moving violations while pursuing the two motorcycles.

According to the Trooper, Appellant then drove his motorcycle to the intersection and stopped. *Id.* at 8. The Trooper testified, "So at that point I [waved] him over, because I wanted to see, you know, who was at the bar." *Id.* at 9. He then told Appellant to "stay there" because he was talking to the other motorcyclist. *Id.* at 10. He positioned the two close to each other so he "could keep an eye on them" while waiting for his backup. *Id.* at 21.

The Trooper went back and forth between Appellant and the driver of the other motorcycle. *Id.* at 10. During these interactions, he noticed the other motorcyclist had a five-to-six inch long laceration on his forehead and Appellant "had a strong odor of alcohol coming from him[,]" "[h]is speech was slurred[,]" "he was actually staggering when he got off his motorcycle[,]" and "[h]e was acting very slow and sluggish." *Id.* at 10, 12. The Trooper checked Appellant's driver's license and registration, and the latter was expired. *Id.* at 21, 24.

When backup arrived, another trooper drove Appellant back to the bar, where it was determined that he was not involved in the fight. At some point, Trooper Roussell administered a horizontal gaze nystagmus test on Appellant, which "showed six out of six indicators[,]" and took a preliminary breathalyzer test, which indicated Appellant had a blood alcohol content of

0.138%.[2] *Id.* at 13. The Trooper arrested Appellant for DUI. Appellant was transported to a police station, and a blood test was performed. The blood test returned with a blood alcohol content reading of 0.144%.

Appellant was charged with several counts of DUI, registration and certificate of title required, and several traffic violations. Appellant filed an omnibus pretrial motion on September 10, 2013, asserting, *inter alia*, that he was stopped without reasonable suspicion and requesting the suppression of all evidence. The trial court held a hearing on October 23, 2013, and denied Appellant's suppression motion.

Appellant proceeded to a nonjury trial on April 15, 2014, at which he was found guilty of DUI—high rate. The court, on June 5, 2014, sentenced Appellant to serve thirty days to six months' imprisonment and pay a mandatory fine of $750. Appellant filed a timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement.[3]

Appellant, in the brief filed in support of this appeal, asserts the trial court erred in denying his suppression motion.[4] He claims the Trooper

---

[2] The Trooper's testimony did not indicate whether he conducted the field tests at the intersection where he stopped the two motorcycles or the parking lot of the bar. However, the Trooper stated he did not administer certain tests due, in part, to the gravel in a parking lot. N.T. at 13.

[3] The Honorable Keith B. Quigley presided at the suppression hearing. President Judge Kathy A. Morrow presided at trial and sentencing. Judge Morrow authored the court's Pa.R.A.P. 1925(a) opinion.

[4] Appellant presented the following three questions for review:

lacked reasonable suspicion to conduct a traffic stop.[5] In support, he argues

Trooper Roussell (1) pursued him and the other motorcyclist on a "hunch"

that they were involved in the fight at the bar, (2) did not observe him

commit a moving violation when following him, and (3) initially drove past

> Did the officer have the requisite reasonable articulable suspicion upon which to base the traffic stop of Appellant's motorcycle?
>
> Did the police have sufficient reasonable articulable suspicion to justify [Appellant's] detention, and conduct a D.U.I. investigation?
>
> Did the officer possess valid probable cause to arrest [Appellant]?

Appellant's Brief at 6. However, Appellant set forth only one argument that the trial court erred in finding reasonable suspicion to stop him and all evidence should have been suppressed as "fruits of a poisoned tree." **Id.** at 10-13. Therefore, we address Appellant's first question presented, but not the last two questions, which have been abandoned in this appeal. **See Commonwealth v. Bullock**, 948 A.2d 818, 823 (Pa. Super. 2008).

[5] We note the Commonwealth asserts the interaction between Appellant and the Trooper was a "mere encounter" because Appellant voluntarily came to stop at the intersection and the Trooper merely waved him over to where he had stopped the other motorcycle. Commonwealth's Brief at 5-6. However, the Trooper had a marked police vehicle with its emergency lights activated. Additionally, the Trooper commanded Appellant to "stay there" because he was talking to the other motorcyclist, and positioned the two motorcycles so he "could keep an eye on them." N.T. at 10. There was no indication the Trooper made his observations regarding Appellant's odor or demeanor before ordering him to remain at the scene of the stop and positioning his vehicle. Therefore, we disagree with the Commonwealth's characterization of the underlying interaction as a mere encounter. **See generally Commonwealth v. Hill**, 874 A.2d 1214, 1217, 1219 (Pa. Super. 2005) (discussing mere encounter versus traffic stop requiring reasonable suspicion).

him and stopped the other motorcycle.  Appellant's Brief at 11.  No relief is
due.

Our standard of review and the legal principles relevant to this appeal
are as follows:

> [I]n addressing a challenge to a trial court's denial of a
> suppression motion [we are] limited to determining
> whether the factual findings are supported by the record
> and whether the legal conclusions drawn from those facts
> are correct.  Since the [Commonwealth] prevailed in the
> suppression court, we may consider only the evidence of
> the [Commonwealth] and so much of the evidence for the
> defense as remains uncontradicted when read in the
> context of the record as a whole.  Where the record
> supports the factual findings of the trial court, we are
> bound by those facts and may reverse only if the legal
> conclusions drawn therefrom are in error.

> [Initially, we] observe that the forcible stop of a vehicle
> constitutes an investigative detention such that there must
> be reasonable suspicion that illegal activity is occurring. . .
> .

> Reasonable suspicion is a less stringent standard than
> probable cause necessary to effectuate a warrantless
> arrest, and depends on the information possessed by
> police and its degree of reliability in the totality of the
> circumstances.  In order to justify the seizure, a police
> officer must be able to point to specific and articulable
> facts leading him to suspect criminal activity is afoot.  In
> assessing the totality of the circumstances, courts must
> also afford due weight to the specific reasonable inferences
> drawn from the facts in light of the officer's experience and
> acknowledge that innocent facts, when considered
> collectively, may permit the investigative detention.

> To have reasonable suspicion, police officers need not
> personally observe the illegal or suspicious conduct, but
> may rely upon the information of third parties, including
> 'tips' from citizens.  Naturally, if a tip has a relatively low
> degree of reliability, more information will be required to

establish the requisite quantum of suspicion than would be required if the tip were more reliable. This Court has examined the requirements surrounding reasonable suspicion for automobile stops emanating from information provided by a tipster and has explained:

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

> \* \* \*

> Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Commonwealth v. Washington*, 63 A.3d 797, 802-03 (Pa. Super. 2013).

Instantly, the victim, while in the presence of Trooper Roussell, identified the three motorcycles as being suspects in the underlying fight. *See id.* Additionally, Appellant's failure to stop when the Trooper signaled

him at the bar and the manner in which he drove away from the bar bolstered the Trooper's belief that the two drivers were involved in the fight. In light of these circumstances, we agree with the trial court that the Trooper had adequate reasonable suspicion to stop Appellant's motorcycle. Accordingly, Appellant's claim warrants no appellate relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015