J-S85032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF K.M.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., BIOLOGICAL | : | |
| FATHER | : | No. 1229 WDA 2017 |

Appeal from the Order August 4, 2017
In the Court of Common Pleas of McKean County
Orphans' Court at No: 42-17-0147

BEFORE: BOWES, J., PANELLA, J. and STABILE, J.

MEMORANDUM BY STABILE, J.:           **FILED MAY 30, 2018**

J.G. ("Father") appeals from an order in the Court of Common Pleas of McKean County, Orphans' Court Division, which terminated involuntarily Father's parental rights to his minor son, K.M.G., born in December 2013. We affirm.

The Orphans' Court accurately recounted the history of this case as follows:

> Child was born on December 19, 2013. Father married Mother on November 14, 2014, but Mother and Father were divorced on September 1, 2016. Father had lived with Mother in Ohio but was incarcerated for a crime involving domestic violence from July 30, 2015 through January 21, 2016. Mother moved to McKean County where her parents reside. Following his release from jail[,] Father has been living in his parents' home in Cleveland, Ohio. Since the date that [McKean County Child and Youth Services ("CYS")] took custody of Child, September 11, 2015, [C]hild has been placed with the maternal grandparents and Father has been permitted to have visitation. He has had only limited employment and has no vehicle and cannot drive (although his parents have a vehicle and have transported him to McKean County for hearings). Father has

visited with Child when he has come to permanency review hearings. The visits lasted up to three hours. He has, therefore, spent only approximately fifteen (15) to eighteen (18) hours with the child out of seven hundred fifty (750) days and has made no request or attempt to obtain other periods of visitation. He violated a [P]rotection [F]rom [A]buse order to come to McKean County to attempt reconciliation with Mother and spent a few days but made no attempt to see Child. Father has never sent a gift, greeting card, or letter. He has made only a few telephone calls to talk to Child or to inquire about him. Father has been instructed by [CYS] as to what was required for him to work on obtaining custody and he has made only minimal progress but continues to have no home, no ability to transport, insufficient income and no consistent relationship or communication with Child.

Trial Court Opinion, 8/4/17, at 1-2.

On September 14, 2015, CYS filed a dependency petition for Child alleging that Child lacked proper parental care or control pursuant to 42 Pa.C.S.A. § 6302(1). One week later, CYS filed an amended dependency petition. Following a hearing on October 2, 2015, the Orphans' Court found the Child to be a dependent child. On February 2, 2016, the Orphans' Court appointed Sean Hvizdzak, Esquire, as counsel for Father in proceedings related to Child.

On June 8, 2017, CYS filed a petition for involuntary termination of parental rights for both parents of Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8). Prior to the hearing, Mother filed a petition for voluntary relinquishment of parental rights. On August 1, 2017, the Orphans' Court held a colloquy to confirm Mother's voluntary relinquishment of parental rights and then terminated Mother's parental rights. On the same date, the court held an evidentiary hearing relating to involuntary termination of

Father's parental rights. On August 4, 2017, the Orphans' Court docketed an order terminating Father's parental rights. This timely appeal followed.

Mr. Hvizdzak has filed an **Anders** brief[1] for Father and a motion to withdraw as Father's counsel. The single issue raised in Father's brief is "[w]hether the trial court erred in finding that the evidence admitted at trial was sufficient to support an involuntary termination of parental rights?" **Anders** Brief at 3.

When counsel files an **Anders** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **Commonwealth v. Washington**, 63 A.3d 797, 800 (Pa. Super. 2013); **see also Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("[w]hen faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw[ ]") (citation omitted). This Court extended **Anders'** principles to appeals involving the termination of parental rights. **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992). Thus, counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an **Anders** brief. **In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004).

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

To withdraw, pursuant to **Commonwealth v. Millisock**, 873 A.2d 748

(Pa. Super. 2005) and its progeny, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). We further review the **Anders** brief for compliance with the requirements set forth in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009):

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 361. "Once counsel has satisfied the above requirements, it is then this

Court's duty to conduct its own review of the trial court's proceedings and

render an independent judgment as to whether the appeal is, in fact, wholly

frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super.

2007) (*en banc*).

Mr. Hvizdzak complied with **Anders'** requirements. He filed a motion in

this Court to withdraw as counsel, asserting that he made a conscientious

review of the record and determined the appeal would be frivolous. He filed an *Anders* brief that complies with the requirements set forth in *Santiago*. Finally, he attached to the motion to withdraw the letter he sent to Father advising him of his rights and enclosing a copy of the *Anders* brief. Thus, we proceed to a review of the merits.

In matters involving the involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 directs the court to engage in a bifurcated process. The initial focus is on the conduct of the parent. *In Re A.L.D.*, 797 A.2d 326, 339 (Pa. Super. 2002). The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds delineated in Section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), it must analyze the best interests of the child under Section 2511(b), taking into

primary consideration the child's developmental, physical, and emotional needs. *In Re R.J.S.*, 901 A.2d 502, 508 (Pa. Super 2006).

The Orphans' Court correctly determined that clear and convincing evidence existed to support an involuntary termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1). Section 2511(a)(1) states that the court may terminate parental rights after a petition is filed "when the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." No post–petition conduct by the parents may be considered under this provision. 23 Pa.C.S.A. § 2511(b).

> Although the six month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination. *In re B, N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004)[.]

*In re I.J.*, 972 A.2d 5, 10 (Pa. Super. 2009).

The record demonstrates that Father both evidenced a settled purpose of relinquishing his parental claim to K.M.G and failed to perform his parental duties. Child was born in 2013, and Mother and Father married in 2014. In late 2015 and early 2016, Father was incarcerated in Ohio for a crime of domestic violence against Mother. In September 2016, Mother and Father

divorced, and Mother moved to McKean County, where her parents reside. Following his release from jail, Father lived in his parents' home in Cleveland, Ohio. In February 2017—within six months before the filing of the termination petition, after failing to reconcile with Mother, Father twice told a CYS caseworker to begin adoption proceedings, because neither he nor Mother could care for Child, and Child needed a loving home. In addition, Father failed to send any gifts, cards or letters to Child or maintain any other communications with Child either in or out of jail. Even when he spent a week in the same county as Child, he made no effort at all to arrange to spend time with Child. As of the date of the termination hearing, Father had spent just fifteen to eighteen hours with Child, less than a day of his life, in the two years that Child was with his foster family.

Father made no use of the resources available to him to preserve a relationship with Child. By CYS's request, and later as part of the dependency court's order, Father was to obtain mental health and drug and alcohol evaluations, housing and employment. While Father obtained a mental health evaluation, he never obtained a drug and alcohol evaluation (even though CYS provided him with locations in Cleveland to obtain one), never obtained housing suitable for Child and never was able to maintain employment. Although Father had funds provided to him in his jail account, he never called Child to speak to him or to check on his welfare. Child's foster mother obtained the equipment necessary to allow Father to communicate with Child

through Skype, but Father never provided his contact information necessary for communicating in that fashion. Thus, while persons other than Father attempted to facilitate his reunification with Child, the only affirmative effort Father made was an attempt to raise money for a one-way bus ticket to reunite with Mother, which had nothing to do with Child.

Thus, the evidence satisfies Section 2511(a)(1) by demonstrating Father's settled purpose of relinquishing his parental claim to Child and his failure to perform parental duties. Accordingly, it is unnecessary to address whether the evidence also satisfies Section 2511(a)(2), (5) or (8).

Turning to Section 2511(b), the evidence demonstrates that termination of Father's parental rights is in Child's best interests.

> "Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered" as part of our analysis. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa Super. 2008). "While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citing *K.K.R.-S.*, 958 A.2d at 533-36). [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (emphasis added).

In this case, the evidence shows that there was no bond (or virtually none) between Father and Child. Father was together with Child for only fifteen to eighteen hours of the two years that Child was with his foster family. Child's foster mother testified that Child was not excited about visiting Father and did not ask about him. Conversely, the evidence demonstrates that Child has bonded not only with his foster mother but also with the other members of his foster family, and that Child is thriving in that home environment. Therefore, the evidence meets the standards for termination of parental rights under Section 2511(b).

Based on the foregoing independent analysis of the trial court's termination of Father parental rights, we agree with counsel for Father that the within appeal is wholly frivolous. Our independent review of the record did not reveal any additional, non-frivolous issues overlooked by counsel. Therefore, we affirm the order terminating Father's parental rights involuntarily.

Order affirmed. Motion for leave to withdraw as counsel granted. Renewed motion to quash reply briefs of guardian ad litem and Commonwealth denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/30/2018