J-S19020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                         :  PENNSYLVANIA
                                    :

        v.                                :
                                   :
                                   :

MARQEL STYLES                     :
                                   :
            Appellant          :  No. 3306 EDA 2024

Appeal from the Judgment of Sentence Entered October 21, 2024
In the Court of Common Pleas of Chester County
Criminal Division at No:  CP-15-CR-0000661-2021

BEFORE:  PANELLA, P.J.E., STABILE, J., and BECK, J.

MEMORANDUM BY STABILE, J.:          **FILED JULY 31, 2025**

Appellant, Marqel Styles, appeals from his judgment of sentence of 5½-11 years' imprisonment for robbery and aggravated assault.  Counsel for Appellant seeks permission to withdraw and has filed an **Anders**[1] brief in which he concludes that all issues are frivolous.  We grant counsel's application for leave to withdraw, and we affirm.

On June 18, 2024, Appellant entered an open guilty plea to the above offenses.  During his guilty plea hearing, Appellant agreed to the following facts read into the record by the prosecutor:

> On January 19th, 2021, at approximately 7:30 p.m., in the 700 block of 252 also known as Fairhill Road, in Paoli, Chester County, Pennsylvania, the defendant Marqel Styles, in the course of committing a theft by demanding money from the victim Nymir Robinson, intentionally, knowingly, or recklessly shot the victim with a deadly weapon, to wit, a firearm with a .45 caliber bullet, under circumstances manifesting extreme indifference to the

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

value of human life; striking the victim in his left elbow, causing serious bodily injury, where the bullet was lodged in the victim's arm and was removed during surgery.

The victim suffered two fractured bones and some ligament damage, requiring screws and plates, and causing permanent disfigurement and protracted loss of some of the use of his left arm.

N.T., 6/18/24, at 3-4.

On October 21, 2024, the court imposed sentence. Appellant filed a timely motion for modification of sentence, which the court denied, and a timely appeal to this Court. Subsequently, counsel filed a statement of intent to file an *Anders* brief in lieu of filing a statement of errors complained of on appeal. The court issued a Pa.R.A.P. 1925 opinion stating that it reviewed the record in this matter and found no issues which would entitle Appellant to relief.

In this Court, counsel for Appellant has filed an application to withdraw and an *Anders* brief that raises two issues:

I. WAS APPELLANT'S RIGHT TO SPEEDY TRIAL PER RULE 600 VIOLATED?

II. IN LIGHT OF THIS COURT'S HOLDING IN *COMMONWEALTH V. BERRY*, [323 A.3d 641 (PA. 2024),] DID THE SENTENCING COURT ERR WHEN IT CONSIDERED A PROTECTION FROM ABUSE ("PFA") ORDER AND AN ADMISSION OF DOMESTIC VIOLENCE?

*Anders* Brief at 4.

Before proceeding further, we must address whether counsel has complied with *Anders* and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). *See Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa. Super.

- 2 -

2013); ***Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw"). In ***Commonwealth v. Orellana***, 86 A.3d 877 (Pa. Super. 2014), this Court directed:

> Prior to withdrawing as counsel on a direct appeal under ***Anders***, counsel must file a brief that meets the requirements established by our Supreme Court in ***Santiago***. The brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous.
>
> Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> ***Santiago***, 978 A.2d at 361. Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief.

***Id.*** at 879-80. Counsel's brief complies with these requirements by (1) providing a summary of the procedural history and facts with citations to the record; (2) referring to matters of record relevant to this appeal; and (3) explaining why the appeal is frivolous. In addition, counsel sent his brief to

Appellant with a letter advising him of the rights listed in **Orellana**. Accordingly, all **Anders** requirements are satisfied.

We now examine the issues counsel identified in the **Anders** brief and conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1196 (Pa. Super. 2018) (*en banc*). "If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence." **Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007). If there are non-frivolous issues, we will deny counsel's petition to withdraw and direct him to file an advocate's brief. **Id.**

The first issue in the **Anders** brief is whether Appellant's right to a speedy trial under Pa.R.Crim.P. 600 was violated. The **Anders** brief correctly concludes that this issue is frivolous.

On January 27, 2021, Appellant was charged with regard to offenses that he committed on January 19, 2021. The Commonwealth withdrew a charge of attempted homicide and Appellant waived his right to a preliminary hearing on the remaining charges. On March 25, 2021, the Commonwealth filed a criminal information, and Appellant was arraigned. The case was scheduled for trial June 29, 2021. Following the first listing, the case was continued multiple times, all on defense requests, until Appellant entered a guilty plea on June 18, 2024.

On the day of his guilty plea, Appellant signed a guilty plea colloquy that contained the following provisions:

20. If I went to trial, I would have the right to file motions asking the Court for many different kinds of relief. Some of these would be motions to quash or dismiss the charges against me for lack of evidence or for procedural defects; to suppress the use of evidence against me because it was obtained unconstitutionally, as for instance by improper questioning or an illegal search and seizure; and to ask that evidence be suppressed because it was improperly obtained, such as identification testimony. There could be other motions, also. If I file such pre-trial applications, a Judge will have to rule on them before the case could go to trial. I am willing to give up these rights.

28. If I enter a plea in this matter, I give up my right to appeal to the Superior Court on the basis of any trial errors. My rights to appeal after a guilty plea are limited to 4 grounds only:

a. that this Court did not have jurisdiction, as for instance, where the offense occurred in another county;

b. that the sentence imposed was illegal;

c. that I entered my plea either involuntarily or unknowingly; or

d. that my attorney was not competent in the matter in represented me.

Guilty Plea Colloquy, 6/18/24, at 6-7.

During his guilty plea hearing, Appellant testified as follows:

THE COURT: I have in front of me a guilty plea colloquy. Do you recognize this document?

[APPELLANT]: Yes, ma'am.

THE COURT: Are those your initials and is that your signature?

[APPELLANT]: Yes, ma'am.

THE COURT: And did you go over this with Mr. Dodd and /or Mr. Vonderheide?

[APPELLANT]: Yes: ma'am.

THE COURT: And did they answer any questions you had about the rights you're giving up?

[APPELLANT]: Yes.

THE COURT: Do you understand the rights you're giving up by entering a guilty plea?

[APPELLANT]: Yes, ma'am.

THE COURT: And are you satisfied with their representation?

[APPELLANT]: Yes.

THE COURT: Has anybody made you any promises, threatened you, or done anything to otherwise force you to plead guilty?

[APPELLANT]: No, ma'am.

……..

THE COURT: Okay. All right. I'll accept the guilty plea as being knowing, voluntary, and intelligently entered.

N.T., 6/18/24, at 7-9.

The entry of a guilty plea "constitutes a waiver of all nonjurisdictional defects and defenses. When a defendant pleads guilty, he waives the right to challenge anything but the legality of his sentence and the validity of plea." *Commonwealth v. Barbaro*, 94 A.3d 389, 391 n.2 (Pa. Super. 2014). Applying this precept, we held in *Barbaro* that the defendant waived his right to raise a Rule 600 argument on appeal by entering a guilty plea. *Id.*

Appellant's attempt to raise Rule 600 in this appeal fails for the same reason. He waived the right to raise Rule 600 by entering his guilty plea. Indeed, his Guilty Plea Colloquy expressly provided that he waived all defenses

except claims for lack of jurisdiction, an illegal sentence, an involuntary or unknowing guilty plea or incompetence of counsel. *Id.* at ¶ 28. At no point during the guilty plea hearing did Appellant mention Rule 600 or assert that he wanted to preserve this issue for appeal.[2] Accordingly, the **Anders** brief correctly argues that this issue is frivolous.

The second issue in the **Anders** brief is whether the court erred by considering Appellant's PFA order and admission of domestic violence during sentencing. Once again, the **Anders** brief correctly concludes that this issue is frivolous.

During Appellant's sentencing hearing, the court observed that Appellant had a PFA order that was granted in 2022 and remained in effect until October 2023. N.T., 10/21/24, at 21. The court also noted that Appellant admitted that he lived with a "Ms. Robinson" and that there was a "history of domestic violence" in this relationship. *Id.* Defense counsel argued that the PFA order did not constitute a history of violence, because a PFA order "can be issued for any number of things, and it doesn't have to be a history of violence." *Id.* at 48. Counsel also argued that Appellant's admission of domestic violence did not constitute a history of violence, "[D]omestic violence . . . doesn't mean that you have a history of violence *per se*. There are many

---

[2] Appellant made only two requests during his guilty plea hearing. One was for completion of a Pre-Sentence Investigation, and the second was to remain on bail pending sentencing. N.T. 6/18/24, at 9-10.

charges that include just verbal conduct that would qualify as a domestic violence offense . . ." *Id.*

The *Anders* brief states that the Supreme Court recently held in *Berry* that at sentencing, the court cannot take into consideration prior arrests that do not lead to convictions. *Id.*, 324 A.3d at 649, 651. The *Anders* brief correctly reasons, however, that *Berry* does not apply to the present case for two reasons. First, as a matter of due process, a PFA order is not comparable to a bare arrest record. For a court to issue a final PFA order, it must comply with 23 Pa.C.S.A. § 6107(a), which requires a hearing before the court within ten business days of the filing of a petition, at which time the plaintiff must prove the allegation of abuse by a preponderance of the evidence. In addition, Section 6107 requires that the defendant be given notice of the hearing, the right to be represented by counsel, the right to present evidence, and the right to compel attendance of witnesses. A mere arrest, however, takes place without any of these protections. Second, as *Berry* reasoned, one reason for not considering arrest records at sentencing is the disproportionate treatment of individuals as a result of demographics:

> reliance on arrest records may also exacerbate sentencing disparities arising from economic, social and/or racial factors. For example, officers in affluent neighborhoods may be very reluctant to arrest someone for behavior that would readily cause an officer in the proverbial "high crime" neighborhood to make an arrest. A record of a prior arrest may, therefore, be as suggestive of a defendant's demographics as his/her potential for recidivism or his/her past criminality.

*Id.* at 652. We see no basis to assume that this reasoning applies to the issuance of PFA orders.

Not only is *Berry* inapposite, but an additional, independent reason exists for concluding that Appellant's objection to his sentencing hearing is frivolous. Since the court was sentencing Appellant for two crimes of violence, robbery and aggravated assault, the existence of a PFA order against Appellant and his admission of domestic violence clearly were relevant sentencing factors. The Protection From Abuse Act defines "abuse" as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102. The existence of a PFA order against Appellant demonstrates that it has been proven by a preponderance of the evidence that Appellant committed one or more of the above acts. This fact is clearly relevant in the context of sentencing for the serious crimes of violence to which Appellant pled guilty - robbery and aggravated assault. Similarly, Appellant's admission of domestic violence against his current paramour was also relevant in the context of sentencing Appellant for his crimes of violence.

For these reasons, we agree with Appellant's counsel that the issues addressed in the **Anders** brief are frivolous. Further, after conducting our own review of the record, we find no arguably meritorious issues that counsel missed or misstated. Therefore, we grant counsel's application to withdraw and affirm Appellant's judgment of sentence.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/31/2025