J-A18027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.J.L. A/K/A C.L.,  A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.H.,  MOTHER | : : : : : : : | |
| | : | No. 168 EDA 2018 |

Appeal from the Decree December 7, 2017
in the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000976-2016,
CP-51-DP-0002360-2015, FID: 51-FN-0019119-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: R.T.B. A/K/A R.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF R.H., MOTHER | : : : : : | |
| | : | No. 174 EDA 2018 |

Appeal from the Decree December 7, 2017
in the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000977-2016,
CP-51-DP-0002359-2015, FID: 51-FN-0019119-2015

BEFORE:   STABILE, J., STEVENS, P.J.E.*, and STRASSBURGER, J.**

MEMORANDUM BY STEVENS, P.J.E.:                **FILED OCTOBER 10, 2018**

Appellant, R.H. ("Mother"), files these consolidated appeals from the decrees dated and entered December 7, 2017, in the Philadelphia County Court of Common Pleas, granting the petition of the Philadelphia Department of Human Services ("DHS") and involuntarily terminating her parental rights

_____
*   Former Justice specially assigned to the Superior Court.
** Retired Senior Judge assigned to the Superior Court.

to her minor, dependent sons, C.J.L., born in May 2013, and R.T.B., born in

August 2009 (collectively, the "Children"), pursuant to the Adoption Act, 23

Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1, 2]  In addition, on May 3, 2018,

_____

[1] By separate decree dated and entered the same date, the trial court involuntarily terminated the parental rights of R.T.B.'s father, E.H.B.  While E.H.B. filed an appeal, docketed at Superior Court No. 177 EDA 2018, this appeal was quashed *sua sponte* as untimely on April 20, 2018.  Further, by decree dated and entered February 15, 2018, the trial court voluntarily terminated the parental rights of C.J.L.'s father, J.L., Jr., who did not file an appeal.

[2] While Mother additionally purportedly appeals from the orders dated and entered the same date changing the Children's permanent placement goals to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351, and although the trial court discusses the issue of goal change in its Opinion, it does not appear to this Court that the issue of goal change was appropriately preserved.  We note that Mother does not reference goal change in the statement on her notice of appeal.  Rather, Mother indicates the termination of her parental rights only.  Further, our review of the record reveals that no goal change took place with regard to C.J.L. until February 15, 2018.  The trial court specifically noted at the conclusion of the hearing on December 7, 2017 that it was not changing C.J.L.'s goal to adoption at the time "because I am holding the matter under advisement to see if father voluntarily relinquishes his rights." Notes of Testimony ("N.T."), 12/7/17, at 69.  The court's December 7, 2017 permanency review order maintained C.J.L.'s permanent placement goal as return to parent or guardian.  Permanency Review Order, 12/7/17 (C.J.L.). We, therefore, do not address goal change.

We further note that it appears from the record that Mother filed one notice of appeal and one concise statement of errors complained of on appeal, which was copied and placed in the record four times with the inapplicable docket numbers crossed-out, and any other necessary corrections, on each.  It is unclear if this was done by Counsel or the court.  Nonetheless, we caution Mother that the correct procedure is to file a separate notice of appeal from the decree terminating parental rights and the goal change order for each child.  ***See*** Pa.R.A.P. 341, Note ("Where, however, one or more orders resolves [sic] issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.").  Because we

counsel for Mother ("Counsel") filed a brief, as well as a petition to withdraw, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009).[3] After review, we deny Counsel's petition to withdraw, vacate the decrees without prejudice, and remand for further proceedings consistent with this memorandum.

The trial court summarized the relevant procedural and factual history as follows:

**PROCEDURAL HISTORY**:

. . .

On July 30, 2015, the Department of Human Services (DHS) received a General Protective Services (GPS) Report alleging that the Children were residing in a home that was not appropriate; that the family resides in a single bedroom apartment with one bed and the Mother, and her paramour, M.D., sleep in the bed and the Children sleep on mats on the floor; that the Children's maternal grandfather and uncle also reside in the home; that there is no refrigerator in the home; that the Children eat take-out food every day; that there are unreported adult males selling drugs out of the home; that the unreported adult males carry

---

discern no prejudice arising from this procedural misstep, we decline to quash or dismiss Mother's appeals. We, however, recognize our Supreme Court's recent decision in ***Commonwealth v. Walker***, \_\_\_ Pa. \_\_\_, 185 A.3d 969, 977 (2018) (holding, "**[P]rospectively**, where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case.") (emphasis added).

[3] We observe that, while Counsel filed an ***Anders*** brief along with a petition to withdraw, presumably as Counsel's filing is only titled as a brief, it was not docketed as an ***Anders*** brief and petition to withdraw. Nonetheless, given that it was, in fact, an ***Anders*** brief and petition to withdraw appropriately served on all parties, we will treat it as such.

- 3 -

firearms in the home; that a number of unknown persons come and go from the home; that Mother and the Children were residing in the home illegally; and that the landlord is in the process of evicting the family from the home. The report also alleged that one [c]hild, C.J.L., is diagnosed with asthma[,] for which he is prescribed medication and a nebulizer; that Mother is receiving benefits from DPW; that Mother has a history of being verbally aggressive; and that Mother punched the older [c]hild, R.T.B., in the chest, but it was unknown if he suffered any injury from the incident. This report was substantiated. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "a").

[On] August 3, 2015, DHS went to the home, but no one appeared to be at the home. DHS left a letter requesting Mother contact DHS. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "b").

On August 4, 2015, DHS again went to the home, and Mother was present and she denied the allegations in the GPS report and stated there were no drugs being sold from the home and no firearms in the home. Mother provided DHS with documentation that she was being evicted on 8/10/2015, and stated that she was a sub-tenant and that the person to whom she paid rent was not paying the landlord. DHS learned that the Children were residing with their maternal great-aunt, F.W., through a family arrangement. Mother stated she was providing financial support to F.W.[] for the Children, and was attending drug treatment, but was unable to provide DHS with any documentation or locations of treatment facilities; and that Mother did not have a paramour that resided in the home. DHS observed a male leaving the home, who Mother denied was her paramour, and stated he was a family friend. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "c").

On August 8, 2015, DHS went to the home of F.W., who stated that Mother's home was a known drug house in the neighborhood; that she had been caring for R.T.B. since he was two months old because Mother was diagnosed with depression; and stated that the Children had been in her care due to Mother's poor parenting skill and lack of parent-[c]hild bonds; that the younger [c]hild[], C.J.L., was two years old, was not toilet trained,

and [was] still fed via an infant bottle at night; that the [c]hild appears to have a speech impediment; that Mother had stated to her that she was unable to obtain an appointment to have C.J.L. evaluated; that Mother had a history of not inquiring as to the health or welfare of the Children. F.W. signed a Safety Plan stating that the Children would reside in her home until Mother secured stable housing and that she would ensure that all of the Children's basic needs were met and they were safe. F.W.[] requested Kinship Care services. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "d").

DHS subsequently learned that Mother was not financially assisting F.W.[, and] that Mother was not visiting the Children and she was not returning telephone calls to F.W. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "e").

From August 8, 2015, until August 21, 2015, DHS made a number of attempts to contact Mother, to no avail. Mother never returned telephone calls from DHS. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "f").

On August 21, 2015, DHS obtained an Order of Protective Custody (OPC) for both Children, who remained in the care of F.W. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "g").

A Shelter Care Hearing was held on August 24, 2015, before the Juvenile Court Hearing Officer, William T. Rice. The [c]ourt lifted the OPC's, and temporary legal custody of the Children was transferred to DHS. Physical custody of the Children was ordered to [M]aternal [G]reat [A]unt, F.W. Mother to be offered supervised visits at the Agency, and supervised visits at F.W.'s home. . . .DHS to do home assessment and clearances on [M]aternal [G]reat [A]unt, F.W. DHS to follow up with Children's medical, and provide beds if necessary. DHS to assist Mother with transportation for visitation if necessary, and make a referral for Kinship Care. Children are doing well, and safe as of 8/15/2015. (Shelter Care Orders, 8/24/2015).

As of August 24, 2015; the whereabouts of R.T.B.'s Father, E.H.B., and C.J.L.'s Father, J.L., Jr., were unknown to DHS.

- 5 -

(Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "i").

An Adjudicatory Hearing was held for both Children on September 8, 2015, before the Honorable Allan L. Tereshko. The [c]ourt ordered legal custody to remain with DHS, and physical custody to remain with [M]aternal [G]reat [A]unt, F.W. The Children were Adjudicated Dependent. Mother to have weekly supervised visitation at the Agency, as arranged, which may be modified if Mother has three negative drug and alcohol screens. Mother referred to CEU [("Clinical Evaluation Unit")] unit for a forthwith full drug screen and alcohol assessment, and monitoring, and 3 random drug screens prior to next court date. Mother to comply with all services and recommendations. DHS to do PLS on Father. DHS to provide beds and dresses [sic] for F.W., and to apply for Child's birth certificate, if necessary, and ensure Child is up-to-date with medical and dental. C.J.L. is to be referred to Child Link for Early Intervention Services. Child is doing well and is safe as of 9/05/2015. (Orders of Adjudication and Disposition-Child Dependent, 9/08/2015).

On September 14, 2015, DHS/CUA [("Community Umbrella Agency")] held an initial Single Case Plan (SCP) Meeting. The parental objectives for Mother were: 1) comply and cooperate with CUA services; 2) locate and occupy suitable housing for herself and the Children; 3) participate in ARC [("Achieving Reunification Center")] services for employment and parenting; 4) to achieve and maintain drug and alcohol sobriety; 5) to comply with dual diagnosis assessment, evaluation, and drug and alcohol treatment; 6) complete three random drug screens. The parental objectives for both Fathers were: 1) to make their whereabouts known to DHS/CUA. Parents did not participate. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/19/2016, ¶ "k").

. . .

Trial Court Opinion, 3/13/18, at 3-10.

The trial court held regular permanency review hearings in this matter. Throughout these reviews, the trial court maintained the Children's

commitment and placement, and permanent placement goal. *See* Exhibits DHS 7, 8.

DHS filed petitions to terminate Mother's parental rights and for a goal change on October 19, 2016. The trial court held a hearing on December 7, 2017. In support thereof, DHS presented the testimony of Robinson Sanchez, former CUA Case Manager, Asociación Puertorriqueños en Marcha ("APM"); Derek Van, current CUA Case Manager, APM. DHS further offered Exhibits 1 through 16, which were admitted without objection. N.T. at 5-6; *see also* Decree of Involuntary Termination of Parental Rights, 12/7/17, at 2. In addition, Mother, who was present and represented by counsel, testified on her own behalf. The Children were represented by a guardian *ad litem* and legal counsel during this proceeding.

By decrees dated and entered on December 7, 2017, the trial court involuntarily terminated the parental rights of Mother to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[4] Further, by order dated and entered the same date, the trial court changed the permanent placement goal of R.T.B. to adoption. By order dated and entered February 15, 2018,

---

[4] We note that, although the trial court indicated grounds for termination of Mother's parental rights pursuant to Section 2511(a)(1), (2), and (b) on the record at the conclusion of the hearing, N.T. at 66-67, the decrees entered by the court note findings of grounds for termination pursuant to Section 2511(a)(1), (2), (5), (8), and (b), Decree of Involuntary Termination of Parental Rights, 12/7/17, at 2.

the trial court changed the permanent placement goal of C.J.L. to adoption. On January 8, 2018, Mother, through appointed counsel, filed a timely notice of appeal,[5] as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte* on April 4, 2018.

When counsel files an ***Anders*** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. ***Commonwealth v. Washington***, 63 A.3d 797, 800 (Pa.Super. 2013); ***see also Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa.Super. 2005) (stating, "When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw[]") (citation omitted). In ***In re V.E. & J.E.***, 611 A.2d 1267 (Pa.Super. 1992), this Court extended the ***Anders*** principles to appeals involving the termination of parental rights. ***Id.*** at 1275. Counsel appointed to represent an indigent parent on appeal from a decree involuntarily terminating parental rights may therefore petition this Court for leave to withdraw representation and submit an ***Anders*** brief. ***In re S.M.B.***, ***A.M.B., & G.G.B.***, 856 A.2d 1235, 1237 (Pa.Super. 2004). In ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009), our Supreme Court explained,

---

[5] While the notice of appeal should have been filed no later than January 6, 2018, January 6, 2018 fell on a Saturday. Hence, the notice of appeal was timely filed on January 8, 2018. ***See*** Pa.R.A.P. 903(a) (notice of appeal shall be filed within thirty days after the entry of the order from which the appeal is taken); 1 Pa.C.S.A. § 1908 (computation of time).

"the major thrust of **Anders** . . . is to assure that counsel undertakes a careful assessment of any available claim that an indigent appellant might have." **Id.** at 174, 358. The Court stated that this "is achieved by requiring counsel to conduct an exhaustive examination of the record and by also placing the responsibility on the reviewing court to make an independent determination of the merits of the appeal." **Id.**

> To withdraw, counsel must:
>
> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa.Super. 2009)); **see also Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014); **Commonwealth v. Millisock**, 873 A.2d 748, 751 (Pa.Super. 2005). Counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Millisock**, 873 A.2d at 752.

We further review Counsel's **Anders** brief for compliance with the requirements set forth in **Santiago**, **supra**.

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state

counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

602 Pa. at 178-79, 978 A.2d at 361. Once counsel has satisfied the above requirements, it is then this Court's duty to conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." **Commonwealth v. Yorgey**, ___A.3d___, 2018 WL 2346441, at *4 (Pa.Super. filed May 24, 2018) (*en banc*) (quotation omitted).[6]

Counsel has satisfied the first requirement of **Anders**. Although Counsel does not directly state in her petition to withdraw that, after making a conscientious examination of the record, she has determined that the appeal is frivolous, Counsel does indicate she is filing an **Anders** brief and references **Santiago**, **supra**. Further, in the **Anders** brief, which Counsel forwarded to Mother, along with the petition, Counsel asserts that she has made a conscientious examination of the record and determined the appeal is

_____

[6]In **Yorgey**, an *en banc* panel of this Court relevantly held:

[W]e must give **Anders** a most generous reading and review 'the case' as presented in the entire record with consideration first of issues raised by counsel. . . .[T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them.

**Yorgey**, 2018 WL 2346441, at *5 (citation omitted).

frivolous. ***Anders*** Brief at 17, 31 (unpaginated). We, therefore, find this requirement satisfied. Likewise, Counsel has satisfied the second requirement by filing an ***Anders*** brief that complies with the requirements set forth in ***Santiago***, ***supra***. With respect to the third requirement, Counsel has attached to the petition to withdraw a copy of the letter sent to Mother advising her of her rights, and enclosing a copy of the ***Anders*** brief. Hence, we conclude that Counsel has complied with the procedural ***Anders*** requirements and proceed to a review of the merits.

Upon review of the record, we have identified an issue relating to the representation provided by the Children's legal counsel. Our Supreme Court, in ***In re Adoption of L.B.M.***, _ Pa. _, 161 A.3d 172, 180 (2017) (plurality), held that Section 2313(a)[7] requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The court defined a child's legal interests as synonymous with

---

[7] Section 2313 provides, in relevant part:

§ 2313. Representation.

**(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

. . .

- 11 -

his or her preferred outcome and distinct from a child's best interests, which must be determined by a court. *Id.* at 174.

We find instructive this Court's recent holding in *In re T.M.L.M.*, 184 A.3d 585, 590 (Pa.Super. 2018), which involved a child who was just under six years old at the time of the hearings to terminate his mother's parental rights. In that case, the child's attorney did not attempt to interview him, nor did she set forth his preferred outcome on the record. *Id.* at 589-90. The attorney advocated solely for the child's best interests during the hearings, rather than his legal interests. *Id.* at 590. Finally, the attorney did not file a brief on appeal, nor did she join a brief filed by another party. *Id.*

This Court concluded that the attorney's representation failed to comply with the requirements of 23 Pa.C.S.A. § 2313(a) and *L.B.M.*, *supra*, and vacated the order terminating the mother's parental rights. We explained our decision as follows:

> At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, . . . it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has

- 12 -

been deprived impermissibly of his statutory right to counsel serving his legal interests.

**T.M.L.M.**, 184 A.3d at 590; **see also In re Adoption of M.D.Q.**, ____ A.3d ____, 2018 WL 3322744 (Pa.Super. filed July 6, 2018) (vacating and remanding where the record does not indicate that counsel attempted to ascertain the children's preferences and the record does not reflect the children's legal interests); **see also In re Adoption of D.M.C.**, ____ A.3d ____, 2018 WL 3341686 (Pa.Super. filed July 9, 2018) (vacating and remanding where the record was unclear in what capacity the attorney had been appointed to represent the children and whether the attorney had ascertained the children's legal interests prior to the hearing).

Instantly, the Children were represented by legal counsel, Jeffrey Bruch, Esquire, at the termination/goal change hearing on December 7, 2017.[8] However, we observe that, while present, Attorney Bruch did not appear to participate in this proceeding in any meaningful way. He did not present evidence, ask questions, or argue on behalf of the Children's legal interests.[9] He did not indicate that he met with the Children, who were eight-and-a-half years old and four-and-a-half years old, nor did he clarify the Children's preferred outcomes on the record. Additionally, Attorney Bruch did not file a brief on appeal. **See T.M.L.M.**, 184 A.3d at 590 ("Counsel's duty to represent

---

[8] The Children were additionally represented by a separate guardian *ad litem*, Jacqueline Hart, Esquire.

[9] We recognize that no argument was taken by the court as to the termination/goal change at the conclusion of the hearing.

a child does not stop at the conclusion of the termination of parental rights hearing.").

Moreover, while revealing only two visits with Mother since the Children have been in care and a lack of a parent-child bond, as well as a positive relationship and bond with their foster mother, N.T. at 18-19, 22-23, 27-28, 38-39, the record suggests no clear indication as to the Children's preference.

Therefore, we are constrained to conclude that the Children did not receive the benefit of counsel representing their legal interests and directed by them. As indicated, the Children were eight-and-a-half years old and four-and-a-half years old at the time of the hearing, and there is nothing in the record to suggest that they were unable to provide at least some input as to their preferred outcomes in this case. However, the record contains no clear indication of the Children's preferences. The record does not reveal that Attorney Bruch attempted to ascertain their preferences, nor does it reveal an attempt to advocate for such preferences during the termination/goal change proceedings.

Having reached this conclusion, we must determine the appropriate remedy. Under normal circumstances, because this is an *Anders* case, we would deny the petition to withdraw and direct counsel to file an advocate's brief arguing the issue of the Children's inadequate representation by legal counsel. *See Commonwealth v. Tejada*, 176 A.3d 355, 362 (Pa.Super. 2017) (denying counsel's petition to withdraw and directing her to file an

advocate's brief, where her **Anders** brief included an issue that was not frivolous).

However, when addressing a parent's right to counsel in the **Anders** context, this Court has chosen to simply vacate the termination decree and remand without requiring an advocate's brief. **See In re X.J.**, 105 A.3d 1, 7 (Pa.Super. 2014) (vacating the termination decree in an **Anders** case, where the record revealed that the appellant did not receive counsel). We believe that this is the more prudent course of action, because it will remedy the Children's lack of adequate legal representation in an expedient fashion.

Therefore, we deny the petition to withdraw filed by Mother's counsel, and vacate the decrees terminating Mother's parental rights without prejudice. On remand, Attorney Bruch must interview the Children and attempt to discern their preferred outcomes, if he has not already done so. He must then notify the trial court of those preferences.

If the Children are unable or unwilling to provide a preferred outcome, Attorney Bruch must inform the court of that, as well. If the Children's preferred outcomes are consistent with the result of the prior termination proceeding, the court may re-enter its decrees. If the Children's preferred outcomes are inconsistent with the result of the prior proceeding, the court must conduct a new hearing to allow counsel to advocate for the Children's legal interests. We observe that Children may have differing preferred outcomes as to Mother, in which case Attorney Bruch shall inform the trial court, and the court shall appoint additional legal-interests counsel, so that

each child is represented separately, and conduct further proceedings consistent with this memorandum.

Counsel's petition to withdraw denied. Decrees vacated without prejudice to permit the trial court to re-enter the original decrees if a new hearing is not held. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Stabile has joined the memorandum.

Judge Strassburger files a dissenting memorandum.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/10/18