J-S14002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE MATTER OF THE ADOPTION OF: N.C.H., MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: T.M.H., THE MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1335 WDA 2022 |

Appeal from the Decree Entered October 17, 2022
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  2022-00052

| IN THE MATTER OF: THE ADOPTION OF: P.G.T.H., MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: T.M.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1336 WDA 2022 |

Appeal from the Decree Entered October 17, 2022
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  52 In Adoption 2022

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                 **FILED:  June 23, 2023**

T.H. ("Mother") appeals from the decrees dated October 13, 2022, and entered October 17, 2022, in the Erie County Court of Common Pleas, involuntarily terminating her parental rights to her son, N.C.H., born in

_____

[*] Retired Senior Judge assigned to the Superior Court.

January 2022, and her daughter, P.G.T.H., born in June 2020 (collectively, "the Children").[1]   Further, counsel for Mother, Emily M. Merski, Esquire ("Counsel"), has filed petitions to withdraw and briefs pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[2]  After review, we grant the petitions to withdraw and affirm the termination decrees.

Erie County Office of Children and Youth ("the Agency") obtained emergency protective custody of P.G.T.H. on July 2, 2021, due to concerns regarding the family's homelessness, as well as Mother's untreated mental health and substance abuse, and placed P.G.T.H. in kinship care. **See** Order (Emergency Protective Custody), 7/2/21. The court adjudicated P.G.T.H. dependent on July 16, 2021, and maintained her commitment and placement. **See** Recommendation for Adjudication and Disposition, 7/16/21, at 1-2. During P.G.T.H.'s dependency, Mother gave birth to N.C.H., who was declared dependent in March 2022, shortly after his birth.

---

[1] By separate decrees, also dated October 13, 2022, and entered October 17, 2022, the court terminated the parental rights of N.C.H.'s and P.G.T.H.'s respective fathers, C.L.J. and K.R.L. Neither father filed a separate appeal, and neither are a participating party to the instant appeals.

[2] This Court extended the **Anders** procedure to appeals from decrees involuntarily terminating parental rights in **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992).

On July 27, 2022, the Agency filed petitions for the involuntary termination of parental rights as to the Children.[3] Specifically, the Agency sought termination as to N.C.H. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (6), and (b), while requesting termination regarding P.G.T.H. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a hearing on the petitions on October 13, 2022, wherein Mother, who arrived late, was represented by counsel. N.C.H. and P.G.T.H., then nine months and twenty-eight months old, respectively, were represented by Steven George, Esquire.[4] The Agency presented the testimony of caseworker Kayla Stewart and introduced Exhibits 1 through 14, which were admitted into the record

---

[3] The Agency filed an amended termination petition as to N.C.H. on August 17, 2022. Upon review, we do not discern any distinction.

[4] Attorney George, the Children's guardian *ad litem* ("GAL") in the underlying dependency proceedings, was appointed to serve as legal counsel on August 1, 2022. Our Supreme Court has instructed this Court to verify *sua sponte* that the court appointed counsel to represent a child pursuant to 23 Pa.C.S.A. § 2313(a), and if counsel served in a dual role, that the court determined before appointment that there was no conflict between a child's best and legal interests. *See In re Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020). However, if a child is "too young to be able to express a preference as to the outcome of the proceedings," there is no conflict between a child's legal and best interests, and a child's subsection 2313(a) right to counsel is satisfied by an attorney- GAL who represents the attorney-GAL's view of the child's best interests. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018). At the hearing, Attorney George indicated that the Children were "too young to express a preference as to what their preferred outcome is." N.T., 10/13/22, at 37. As such, we conclude that their statutory right to counsel was satisfied by the dual appointment of Attorney George.

without objection. *See* N.T., 10/13/22, at 4. Finally, Mother testified on her own behalf.

Pursuant to decrees dated October 13, 2022, and entered October 17, 2022, the court involuntarily terminated Mother's parental rights as to N.C.H. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (6), and (b), and terminated Mother's parental rights as to P.G.T.H. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Mother filed timely notices of appeal in both cases. In lieu of a concise statement of errors complained of on appeal, Counsel submitted accompanying statements of intention to file an *Anders* brief pursuant to Pa.R.A.P. 1925(c)(4).[5]  *See re J.T.*, 983 A.2d 771, 774 (Pa.

_____

[5] Pa.R.A.P. 1925(c)(4) provides:

> **(c) Remand.**
>
> . . .
>
> (4) If counsel intends to seek to withdraw in a criminal case pursuant to *Anders/Santiago* or if counsel intends to seek to withdraw in a post-conviction relief appeal pursuant to *Turner/Finley*, counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a Statement. If the appellate court believes there are arguably meritorious issues for review, those issues will not be waived; instead, the appellate court shall remand for the filing and service of a Statement pursuant to Pa.R.A.P. 1925(b), a supplemental opinion pursuant to Pa.R.A.P. 1925(a), or both. Upon remand, the trial court may, but is not required to, replace an appellant's counsel.

Pa.R.A.P. 1925(c)(4).

Super. 2009) (holding that the decision of counsel to follow Pa.R.A.P. 1925(c)(4) procedure in a termination of parental rights case was proper). This Court subsequently consolidated Mother's appeals *sua sponte* on and the orphans' court filed a Rule 1925(a) opinion on January 9, 2023.

Counsel filed petitions to withdraw, as well as **Anders** briefs, in both cases. By order of February 14, 2023, this Court vacated the existing briefing schedule and struck Counsel's **Anders** brief and directed Counsel to file briefs that comply with all of the relevant procedural and substantive requirements of **Anders** and **Santiago**, or submit advocate's briefs on or before February 21, 2023. On February 16, 2023, Counsel filed new **Anders** briefs and petitions to withdraw.[6]

When counsel files an **Anders** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **See Commonwealth v. Washington**, 63 A.3d 797, 800 (Pa. Super. 2013). To procedurally withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

[6] Despite the consolidation of Mother's appeals and the orphans' court filing of a singular Rule 1925(a) opinion, Counsel filed separate **Anders** briefs and petitions to withdraw.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for *Anders* briefs:

> counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Instantly, Counsel filed petitions to withdraw certifying her conscientious review of the record and determination that Mother's appeals are frivolous. Counsel further attached copies of *Millisock* letters informing Mother of her rights with respect to her petitions. Likewise, Counsel has filed *Anders* briefs that substantially comply with the requirements set forth in *Santiago*, *supra*.[7] While we note with displeasure Counsel's failure to cite to the certified record, we remain cognizant that the framework of *Anders* and *Santiago*

---

[7] Mother has not responded to counsel's petition to withdraw and *Anders*/*Santiago* brief. Further, the Agency filed letter briefs with this Court joining in the opinion of the orphans' court.

require substantial, not perfect performance. *See Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007).

Having concluded that Counsel complied with the procedural requirements of *Anders*/*Santiago*, we must next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Counsel raises challenges as to the sufficiency of the evidence in the *Anders* briefs. Counsel's *Anders* brief as to N.C.H. presents the following issues:

> A. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. [§ 2511(a)(1), (2), (5), & (6)]?
>
> B. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. [§ 2511(b)]?

*Anders* Brief (N.C.H.) at 3 (unnecessary capitalization and suggested answers omitted).

Similarly, Counsel's *Anders* brief as to P.G.T.H. presents the following issues:

> A. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. [§ 2511(a)(1), (2), (5), & (8)]?
>
> B. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of

- 7 -

parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. [§ 2511(b)]?

***Anders*** Brief (P.G.T.H.) at 3 (unnecessary capitalization and suggested answers omitted).

We review involuntary termination orders for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." ***In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. ***See Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). An abuse of discretion in this context exists only upon "demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id***. (citation omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis. ***See*** 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under Section 2511(a). Only if the court determines that the petitioner established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section

2511(b), which involves an assessment of a child's needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must prove grounds under both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***C.M.***, 255 A.3d at 359 (citation omitted).

In the case *sub judice*, the orphans' court terminated Mother's parental rights to N.C.H. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (6), and (b), and, likewise, terminated her parental rights to P.G.T.H. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004). Instantly, we will analyze the court's termination decrees pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(2), (b).

To terminate parental rights pursuant to Section 2511(a)(2), we have indicated that

> the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). Parental incapacity is not limited to affirmative misconduct. *See In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021). "To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *Id.* (citations omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) (citation omitted). As such, "A parent's vow to cooperate, after

a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***In re S.C.***, 247 A.3d at 1105 (citation omitted).

In concluding that CYS satisfied the statutory grounds to terminate Mother's parental rights pursuant to, *inter alia*, Section 2511(a)(2), the orphans' court emphasized Mother's failure to complete those goals aimed at reunification and services offered. The court stated:

> A review of the evidence details a mother either incapable or refusing, or both, to take an active role in seeking the return of her children. All the programs designed specifically to address [Mother]'s personal and parenting deficiencies were rejected by her. [M]other continues to deny a drug or alcohol problem even though she tested positive prior to a court hearing after she requested the test. [Mother] was unwilling to participate in random drug testing and refused on 103 occasions to show up. Her excuse-she was "angry[,"] even though that refusal meant she could not visit her baby. The simplest way to alleviate the invalid concerns over drug use, as [Mother] characterized them, was to attend the testing to prove the Agency wrong. [Mother] refused.
>
> [Mother] complained her treatment programs were overwhelming and that no one person could do all that was ordered and succeed. There were numerous components of the plans. However, [M]other just got "angry" and did nothing. The plans were implemented to put her in a position to parent two children safely. There are innumerable challenges to parenting young children. The treatment plans were developed so [Mother] would have the mental stability, a drug free life, and stable environment to meet [] all those challenges. Support systems were offered in order to put [M]other on a path to achieving the return and safe upbringing of her young children. [Mother]'s response-it's too much so I'm going to do nothing.

Orphans' Court Opinion, 1/9/23, at 14.

A review of the record supports the orphans' court's finding of grounds for termination under Section 2511(a)(2). Significantly, the record reveals that Mother has a history of unstable housing, unresolved substance abuse, and untreated mental illness. Stewart testified that P.G.T.H. came into the Agency's care in July 2021 due to these specific issues. *See* N.T., 10/13/22, at 6. Thereafter, N.C.H. also came into care in February 2022, after Mother tested positive for methamphetamines at a court hearing on February 16, 2022. *See* N.T., 10/13/22, at 9, 33.

Throughout the underlying dependency matters, Mother missed over 100 total requested urine screens. *See* N.T., 10/13/22, at 8, 33, 35; *see also* Exhibit 13 (urine screens). Further, although Mother obtained mental health and drug and alcohol assessments, she failed to follow through with suggested treatments as she only attended two follow-up appointments thereafter. *See* N.T., 10/13/22, at 11, 13, 26, 28. In addressing her failure to comply with and submit to urine screens as requested, Mother acknowledged her serial failures and indicated that she was angry and overwhelmed. *See* N.T., 10/13/22, at 24, 27, 33, 35.

While the record reveals a period of compliance and negative screens, from October 26, 2021, to January 12, 2022, the Agency was then unable to corroborate her lack of substance use due to her lack of testing. *See* Exhibit 13 (urine screens); *see also* Exhibit 8 (Court Summary (6/8/22)), at 14. Furthermore, Mother missed over 40 urine screens since February 16, 2022,

alone. *See* Exhibit 13 (urine screens); *see also* N.T., 10/13/22, at 8, 33-35. Accordingly, the trial court did not abuse its discretion in finding her compliance had not improved.

As such, Stewart testified, "[Mother] has not secured stable housing. . . . [S]he has still untreated and unstable mental health and has not [sought] sobriety." N.T., 10/13/22, at 13; *see also id.* at 14. Further, Stewart averred that Mother flatly refused the Agency's efforts to assist her in obtaining help with her substance abuse and mental health issues. *See id.* at 18.

Moreover, Mother declined all accountability and denied the existence of any substance abuse issues. Mother testified:

> Q. Ma'am, I guess, can you help shed some light. Is it your position that you never had a drug problem or that -- I guess, just let me ask that. Do you have a drug and alcohol problem?
>
> A. I don't. I have done drugs. I did have an alcohol problem in 2016.
>
> Q. While this case was open, did [you] have a drug and alcohol problem?
>
> A. No.
>
> Q. So your assertions are that, though it was a basis for your children being removed, drug use concerns, those were never valid and you never had any drug use concerns?
>
> A. No. . . .

*Id.* at 32. Relatedly, Mother denied she was using drugs in February 2022, despite testing positive for methamphetamines, incredulously blaming P.G.T.H.'s father. Mother stated, "[T]he week of the court hearing, I have numerous messages from [P.G.T.H.'s father] stating that that was going to

happen and that my son was going to be taken because of it. So. . . . I feel like he had everything to do with it[.]" *Id.* at 25.

Based on the foregoing, we discern no abuse of discretion by the court in concluding that termination pursuant to Section 2511(a)(2) is warranted with respect to the Children. Mother's repeated and continued incapacity due to unresolved substance abuse and mental health issues is evident from the face of the record, which caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Further, given Mother's refusal to acknowledge these concerns, it is evident that the conditions and causes of Mother's incapacity cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. We remain mindful that, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Having found sufficient grounds for termination pursuant to Section 2511(a)(2), we next must determine whether termination was proper under Section 2511(b), which affords primary consideration to the developmental, physical, and emotional needs and welfare of the child. *See In re T.S.M.*, 71 A.3d at 267. The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability.

*See id*. The determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. *Id*. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond. *Id*.

The evaluation of a child's bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Nevertheless, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *T.S.M.*, 71 A.3d at 267. In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Moreover,

while a parent's emotional bond with his or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (internal quotation marks and citations omitted).

Here, the trial court recognized the lack of a bond between Mother and the Children. Orphans' Court Opinion, 1/9/23, at 15. The court stated:

> [T]he testimony provided by Kayla Stewart, the Agency's evidence, and [M]other's attitude expressed in her testimony, established that there is no parental bond between [M]other and [the C]hildren. The [C]hildren are in [a] good, stable home and have bonded well with the potential adoptive parents. The termination of [Mother]'s parental rights is in the best interest of [the Children] consistent with the guidelines established in 23 Pa.C.S.A. § 2511 (b).

*Id.*

Upon review, we discern no abuse of discretion. The record supports the finding that the Children's developmental, physical, and emotional needs and welfare favor termination of parental rights pursuant to Section 2511(b). *See T.S.M.*, *supra* at 267.

Significantly, as noted *supra*, Mother had no visits with N.C.H. following his removal. *See* N.T., 10/13/22, at 11-12. Further, while Mother participated in fourteen total visits with P.G.T.H. through JusticeWorks from November 2021 through May 2022, *see* Exhibit 14 (JusticeWorks reports), following the

court changing the Children's permanency goals to adoption in June 2022, the Agency was no longer required to offer any services, including visitation, ***see*** Permanency Review Orders, 6/13/22. Stewart testified that there have been no negative effects since the Children stopped having contact with Mother. ***See*** N.T., 10/13/22, at 21.

Moreover, Stewart testified that the Children were placed together in a pre-adoptive foster home where they were doing "exceptionally well." ***Id.*** at 12. She indicated that N.C.H. was in a "tracking program to ensure that he develops appropriately." ***Id.*** Nevertheless, she stated, "[h]e's thriving. He's gaining weight. He's starting to crawl, figure out those movements." ***Id.***

Stewart also noted that P.G.T.H. was adjusting well to daycare. ***Id.*** As a result, she opined that it was in the Children's best interests for Mother's parental rights to be involuntarily terminated. ***See id.*** at 12-14. She further testified that there would be no negative consequences to the Children. ***See id.*** at 13-14. Accordingly, the orphans' court did not abuse its discretion in determining that termination best serves the Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Based on the foregoing independent analysis of the orphans' court's termination of Mother's parental rights, we agree with Counsel that the appeal from the decrees terminating Mother's parental rights pursuant to Section 2511(a)(2) and (b) is wholly frivolous and our review of the record does not reveal any overlooked non-frivolous issues.

Counsel's petitions to withdraw granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/23/2023