J-S02001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: B.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: J.K., FATHER | : | |
| | : | |
| | : | No. 2233 EDA 2023 |

Appeal from the Order Entered August 21, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000909-2021

| IN THE INTEREST OF: B.P.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: J.K., FATHER | : | |
| | : | |
| | : | No. 2234 EDA 2023 |

Appeal from the Decree Entered August 3, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000143-2023

BEFORE: LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED FEBRUARY 21, 2024**

J.K. (Father) appeals from the order and decree, entered in the Court of Common Pleas of Philadelphia County, changing the permanency goal to adoption and involuntarily terminating his parental rights to his child, B.L.

_____

[*] Former Justice specially assigned to the Superior Court.

(born August 2018) (Child). Counsel, Deborah A. Fegan, Esquire,[1] has also filed an **Anders**[2] brief seeking to withdraw on appeal. After careful review, we affirm and grant counsel's petition.[3]

During her prenatal visits, Child's mother, D.R.,[4] tested positive for benzodiazepines, cocaine, and methadone. Child and D.R. tested positive for prescribed methadone at Child's birth in August 2018; as result, Child was closely monitored in the Intensive Care Nursery for withdrawal. D.R. was receiving treatment for her drug problem and attending Family Center for methadone maintenance at the time of Child's birth. Although reports alleged that D.R. was bonding with Child and resided with her at "My Sister's Place," a drug and alcohol center for pregnant women and new parents, on June 11, 2021, the Philadelphia Department of Human Services (DHS) received a general protective service (GPS) report alleging that D.R. and the father of Child's half-sister were engaging in a physical and verbal altercation and that they appeared to be under the influence of substances.

_____

[1] On April 27, 2023, Attorney Fegan was appointed to represent Father.

[2] **Anders v. California**, 386 U.S. 738 (1967).

[3] Father has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), by filing separate notices of appeal for each trial court docket number. **See id.** (holding "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases"). On September 28, 2023, our Court sua sponte consolidated the appeals at Nos. 2233 and 2234 EDA 2023 due to their related parties and issues. **See** Pa.R.A.P. 513.

[4] D.R. is not a party to this appeal.

On June 14, 2021, DHS received a supplemental report alleging that D.R. and the father of Child's half-sibling were arguing again, this time in an office, that Child and her half-sister appeared to be scared and were left alone in the building, and that a third party de-escalated the situation. On June 22, 2021, DHS received a report alleging that D.R. indicated she was going to purchase heroin that day and that she could not take care of her children any longer. On that same day, DHS received a supplemental report alleging that D.R. was attending a daily methadone clinic to taper off her non-prescribed benzodiazepine use, but that D.R. said that it was too hard to do, that she was going to use drugs, that she had someone to care for her children, that she planned to use substances that day, and that she was using fentanyl.

Following a shelter care hearing,[5] held on September 10, 2021, DHS obtained an order of protective custody (OPC) and Child was placed in foster care with her minor half-sister; foster family is a pre-adoptive resource. On September 28, 2021, during a phone call with DHS, D.R. identified J.K. as Child's Father.[6] On October 15, 2021, the Community Umbrella Agency (CUA) held a single case plan (SCP) meeting for Child and her half-sister where a "return to parent" goal was identified. On December 9, 2021, the court ordered a paternity test for Father, referred him to genetic testing, and issued a bench warrant for his arrest. Father appeared in court on January 27, 2022,

_____

[5] *See* 42 Pa.C.S.A. § 6332.

[6] An October 7, 2021 continuance order in the matter lists J.K. as Child's putative father, appoints counsel for Father, and orders a paternity test for him. *See* Continuance Order, 10/7/21.

at which time the court deferred adjudication and ordered Father submit to a paternity test within 10 days.

On February 22, 2022, Child was adjudicated dependent and legal custody was transferred to DHS. At that proceeding, which Father did not attend, the court again ordered Father undergo a paternity test and reissued the bench warrant for his non-compliance. Following a May 11, 2022 permanency hearing, which Father did not attend, the court awarded Father weekly supervised visits at DHS and ordered a "[SCP] meeting to outline objectives for Father." Order, 5/11/22, at 2. Later, at an August 11, 2022 permanency review hearing, the court ordered Father have bi-weekly supervised visits, referred Father to ARC for parenting and housing classes, ordered him to submit to paternity testing prior to the next court date, and ordered him to appear at the next listing. At the next permanency review hearing, held on November 10, 2022, which Father again did not attend, the court found Father had minimally complied with the permanency plan, no longer required Father to participate in genetic testing, and referred Father to behavioral health service (BHS) for a consultation/mental health evaluation.[7]

At a February 2023 permanency review hearing, the court found that Father had not yet engaged in ARC services, changed Father's visits from in-

_____

[7] At the termination hearing, on re-direct examination, CUA case manager, Tae'Jon Petway, testified that he had concerns that Father may have mental health issues because he "continuously brings up the fact that he helped with finding JonBenét Ramsey [and that Father] identifies the lady in the back [of the courtroom] as JonBenét Ramsey." N.T. Termination Hearing, 8/3/23, at 73.

person to virtual, and noted that "CUA [should] explore therapeutic visits." Order, 2/2/23, at 2. The court also re-referred Father to BHS for an evaluation and ordered him to comply with his SCP objectives. *See id.*[8] Father attended 10 out of 16 scheduled, in-person supervised visits from May 2022 to February 2023.

Although the court had previously ordered Father to undergo a mental health evaluation, after Father advised the court that he was investigating JonBenét Ramsey, Father never followed through with the order. On February 21, 2023, Father attended an in-person meeting where his objectives were revised to include that Father establish and maintain a healthy relationship with Child.[9]

On April 12, 2023, DHS filed petitions to change Child's goal to adoption and involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (5), (8), and (b) of the Adoption Act.[10] DHS alleged that

---

[8] Therapeutic visits did commence, however, when the staff assessed the situation and determined that the therapy was not working with Father and Child, the visits ceased. One therapeutic visit was cancelled due to Child's behavior and another visit was cut short due to Father's behavior. *See* N.T. Termination Hearing, 8/3/23, at 44.

[9] On April 2, 2023, DHS filed a motion to have the case relisted before an assigned judge due to Father's refusal to consent to the placement of crowns and nerve treatment recommended by Child's dentist. *See* Motion to Relist Case, 4/2/23 (Father told CUA case manager he will not sign consent because "[Child] doesn't need her teeth done, her teeth looked fine the last time I saw her.").

[10] *See* 23 Pa.C.S.A. §§ 2101-2938. Although DHS' petition initially listed subsection 2511(a)(2) as a reason to support termination, the agency
*(Footnote Continued Next Page)*

Child's reunification with Father was not an "appropriate option for [Child] as [Father] has failed to achieve full and continuous compliance with the established SCP objectives to facilitate reunification with [Child and] has also failed to consistently visit, plan for, and provide for [Child] throughout her time in placement." Petition to Terminate Parental Rights' Statement of Facts Re: [Child] (Exhibit A), 4/1/23, at ¶ nn. On August 3, 2023, the court held a termination hearing before the Honorable Brian McLaughlin. CUA case manager Petway and Father testified at the hearing.[11]

Following the hearing, the trial court entered a decree involuntarily terminating Father's parental rights to Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b), and an order changing the goal to adoption.[12] Father filed contemporaneous timely notices of appeal and Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.

_____

specifically did not move for consideration under that subsection at the termination hearing; rather, the agency moved to terminate under §§ 2511(a)(1), (a)(5), and (a)(8). **See** N.T. Termination Hearing, 8/3/23, at 102-03, 105.

[11] Child was represented by Jason Ross Kleinman, Esquire, and child advocate, Frances M. Odza, Esquire, at the termination hearing. **See** 23 Pa.C.S.A. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and **In re K.R.**, 200 A.3d 969 (Pa. Super. 2018) (en banc); **but see In Re: T.S., E.S.**, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[12] We note that the petitioner needs to establish only one subsection of 2511(a) to proceed to subsection 2511(b), and we may affirm a decree based
*(Footnote Continued Next Page)*

In his **Anders** brief, counsel raises the following issues on behalf of Father:

(1) Whether the trial court abused its discretion when it involuntarily terminated [Father's] parental rights under the Adoption Act[,] 23 Pa.[]C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), and ( a)(8)?

(2) Whether the trial court abused its discretion when it involuntarily terminated [Father's parental] rights pursuant to [section] 2511(b)?

(3) Was there clear and convincing evidence that all necessary services were provided to father prior to the court changing the goal to adoption pursuant to 42 Pa. C.S.A. § 6351(f)(9)?

**Anders** Brief, at vii.[13]

When counsel files an **Anders** brief, this Court may not review the merits without first addressing counsel's request to withdraw. **Commonwealth v. Washington**, 63 A.3d 797, 800 (Pa. Super. 2013). In **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the **Anders**

---

upon any valid reason appearing from the record. **In re C.S.**, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc).

[13] While counsel's **Anders** brief includes a potential issue regarding whether changing Child's goal to adoption was in her best interest, that issue was not included in Father's Rule 1925(b) statement. Moreover, after conducting our own review of the trial court's proceedings, we conclude that the appeal is, in fact, wholly frivolous, and that this issue does not warrant Father relief. **See In re Adoption of S.E.G.**, 901 A.2d 1017, 1018 (Pa. 2006) (court-ordered goal change not condition precedent to filing of petition to terminate parental rights).

principles to appeals involving the termination of parental rights. *Id.* at 1275.

This Court has explained:

> When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw. In order to comply with *Anders* and its Pennsylvania progeny, counsel must:
>
>> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous;
>>
>> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or amicus curiae brief; and
>>
>> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed pro se or raise any additional points that he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citations omitted).

> In *Santiago*, our Supreme Court further held:
>
> [I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Finally, counsel must also "attach to [his] petition to withdraw a copy of the letter sent to [his] client advising her [] of [her] rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005). After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court must then

undertake an independent examination of the record to determine whether the appeal is wholly frivolous. *In re S.M.B.*, 856 A.2d at 1237.

Instantly, counsel has complied with the dictates of *Anders*, *Santiago*, and *Millisock*. Attorney Fegan has filed a petition to withdraw, stating that she has made a conscientious review of the record and has concluded that the appeal was wholly frivolous. In addition, Attorney Fegan has attested that she mailed Father: a copy of the petition to withdraw; a copy of the *Anders* brief stating the reasons for her conclusion; and a letter advising Father of his rights to proceed *pro se* or retain private counsel, and to raise any additional issues that he deems worthy of consideration. Finally, Attorney Fegan has attached to her petition a copy of the letter she mailed to Father advising him of his rights. *Millisock*, *supra*.

Additionally, we conclude that Attorney Fegan's *Anders* brief complies with the dictates of *Santiago* where it: summarizes the procedural history of and facts of the case, with citations to the certified record; identifies the testimony adduced during the termination hearing that arguably supports the appeal and outlines any potential claims; and references controlling case law in setting forth her conclusion that the appeal is frivolous. Thus, counsel has complied with the procedural requirements of *Anders* and we now must determine if Father's appeal is, in fact, frivolous.

Father claims that the trial court erred in concluding that DHS satisfied its burden of proving that termination was proper under subsections 2511(a) and (b). We review a trial court's decision to involuntarily terminate parental

rights for an abuse of discretion or error of law. ***In re A.R.***, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. ***Id.***

After a comprehensive review of the record, we determine that Father's appeal is, in fact, frivolous. Father has either failed to comply or minimally complied with his SCP objectives, which have been in place since early 2022. We rely upon Judge McLaughlin's opinion in affirming the order and decree granting the goal change to adoption and terminating Father's parental rights, under subsections 2511(a)(1)[14] and (b), where the court found clear and

_____

[14] Subsection 2511(a)(1) provides that a parent's rights may be involuntarily terminated under the following grounds:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). Moreover, under subsection 2511(b):

> ***(b) Other considerations.*** — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to [sub]subsection (a)(1), (6)[,] or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

***Id.*** at § 2511(b). ***See In re C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination

*(Footnote Continued Next Page)*

convincing evidence that Father demonstrated a settled purpose of relinquishing his parental claim to Child and failed to perform his parental duties for at least six months prior to the filing of the termination petition and termination is in Child's best interests.

In particular, the evidence shows that: Father has failed to secure appropriate housing for Child; Father has not fulfilled any of his SCP objectives, including obtaining a court-ordered BHS evaluation and employment; Father had not seen Child for almost four months at time of termination hearing; there is no parent-child bond; Father did not have any food in home for Child during caseworker's visit; and pre-adoptive foster parent, whom Child calls "Mommy," meets Child's daily needs, provides stability, and has a strong bond with Child. *See* N.T. Termination Hearing, 8/3/23, at 44 (CUA caseworker testifying "Father hasn't had any successful completion of any of his [SCP] objectives"); *id.* at 67-68 (caseworker called Father on July 19, 2022, and, over the phone "went over all of his [SCP] objectives at that point" with him; Father attended SCP meeting on 2/21/23, and Father's SCP objectives were communicated during 7/28/23 visit); *id.* at 38-39 (CUA caseworker testifying Father did not verify residence or employment, "was very combative" with caseworker, and "fridge was completely empty" in place where they met); *id.* at 47 (CUA caseworker

_____

under subsection 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in subsection 2511(b)).

testifying no bond between Father and Child); *id.* at 42-44 (testimony that Child would "normally cr[y] during all the visits" with Father and therapeutic visits were "traumatizing for [C]hild"); *id.* at 47-48 (CUA caseworker testifying Child would not suffer irreparable harm if Father's parental rights terminated) *id.* at 43, 52 (Father had not visited with Child since April 2023); *id.* at 61, 70 (Father missed 6 out of 16 in-person supervised visits with Child and did not participate in any virtual visits); *id.* at 97-100 (Father testified his only source of income is food stamps, he is not employed, and, despite prior judge ordering him to do so, he has not yet obtained psychological evaluation); *id.* at 46-47, 53 (CUA caseworker testifying Child is "very close with her foster parent;" looks to her foster parent for love, protection, and support, and has "close bond with her foster parent and she's doing well in the home").

Accordingly, we conclude that Father is not entitled to relief. We instruct the parties to attach a copy of Judge McLaughlin's decision in the event of further proceedings in the matter.

Order and decree affirmed. Counsel's petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2024